INHABITANTS OF OAKHAM *vs.* INHABITANTS OF SUTTON.

In an action against a town to recover for the support of a pauper whose settlement was once in that town, the burden of proving that he afterwards acquired a settlement in another town is on the defendants.

A person does not acquire a settlement in a town, under Rev. Sts. c. 45, § 1, clause 4th, by having an estate of inheritance or freehold in the town, and living on the same three years successively, if he receive support as a pauper, during those three years, from the town in which he had his settlement.

Support granted to a person, as a pauper, by the overseers of the poor of the town in which he has a settlement, will prevent his acquiring a settlement in another town in which he resides, although the act of the overseers, in granting such support, be not ratified by the town of whose poor they are overseers.

ASSUMPSIT to recover for supplies furnished by the plaintiffs to Lot Simpson, a pauper, whose settlement was alleged to be in Sutton. The only question raised at the trial in the court of common pleas, before *Washburn, J.* was, whether the pauper had acquired a settlement in the town of Douglas, by having and living upon a freehold estate there, three years successively; it being admitted that his settlement was in Sutton, unless he had so acquired a settlement in Douglas; and it being further admitted, that he owned and lived upon a freehold estate in Douglas long enough to gain a settlement thereby, were it not for certain alleged aid and assistance rendered to him, by the defendants, during that time. It appeared that this alleged aid was furnished on the 3d of May

1842 ; and the evidence tended to show that it was furnished by means of an order for five dollars, drawn by Lewis Torrey upon one Holman, in favor of the pauper, payable in goods. It was admitted that Torrey was then one of the overseers of the poor of Sutton; but the order did not indicate that he drew it in that capacity, and Holman charged it to Torrey's private account. At the time when the pauper obtained the order from Torrey, Holman had an account open with the town of Sutton, in which were entered the orders of the overseers for supplies furnished to paupers ; but nothing was then said, by either party, as to this order's being furnished on the credit of the town.

An order for five dollars was produced in evidence, dated December 12th 1842, drawn by the selectmen of Sutton, (who were admitted to be the overseers of the poor,) on the town treasurer, in favor of said Lewis Torrey, which the treasurer paid ; and there was evidence tending to show that this order was drawn to repay Torrey the amount of the other order above mentioned.

A report of the overseers of the poor of Sutton for the year 1842, made to the town at a town meeting held in 1843, was put into the case, from which it appeared that they had entered the payment of five dollars to said Torrey on account of Lot Simpson. The only action of the town, on this report, was a vote to put it on file.

The defendants inquired of a witness, who was present at the town meeting aforesaid, what was done at said meeting, in reference to said report, and why it was done. But the judge ruled that the questions were incompetent. The defendants then inquired of the witness, whether it was not understood in Sutton, that when a vote is passed to put a report on file, in contradistinction to its being accepted, it is because there is something objectionable in it, which the town refuse to ratify. The judge ruled that the question was incompetent ; and also ruled that the vote to put the report on file was not an acceptance of it. The defendants then asked the witness what was said and done at the town meeting

aforesaid, respecting the support of Lot Simpson, and whethe1 the matter was discussed. These questions also were ruled to be incompetent.

Four questions were argued, by the defendants' counsel, to the jury. 1st. At the time when Torrey furnished the order to Simpson, was Simpson a pauper, and had he fallen into distress? 2d. Did Simpson go to Torrey, claiming and intending to claim aid as a pauper? 3d. Did Torrey furnish the aid, with an intention of charging the same to the town, and not to Simpson? 4th. If Torrey furnished the aid to Simpson, as a pauper, was there any ratification of his act, by the board of overseers of the poor?

The judge instructed the jury, " that if the overseers drew the order of December 12th 1842, upon the town treasury, to repay Torrey, being one of the overseers of the poor, for ai' furnished to Simpson, the burden of proof was on the defendants to explain this, and to show that it was not furnished by said overseers to him as one standing in need of relief, or not intended to be furnished by them as such overseers: And that if Simpson, being apparently in a condition to need immediate relief, applied to Torrey for such relief, and Torrey, being an overseer of the poor, and believing him to stand in need of it, furnished him with the relief required, it would have the effect of relief furnished to one standing in need, although he did not declare, at the time, that he made such application as a pauper; but if, when he made the application, he did not know that Torrey was an overseer of the poor, or did not intend to apply to him, as such, for relief, such relief would not affect the acquiring of a settlement in Douglas: That if Torrey furnished the order to Simpson, in the way of a gift or loan, solely on his (Torrey's) own account, without any expectation or intention of being remunerated by the town; or if he took a promise to himself, with a view of recovering the debt for his own use; then a subsequent payment to him of the sum so advanced by the overseers would not make such aid the furnishing of relief by the town, so as to affect Simpson's settlement: But if Torrey, being an

overseer of the poor, furnished the relief, without being particularly authorized so to do by the other overseers, intending to apply to them to refund it, or expecting to be repaid by the town, and if the overseers, knowing the facts, gave him an order on the town for the repayment of the money, because, as an overseer, he had made the advance, it would be a ratification of his act, and would have the same effect upon Simpson's settlement, as if the aid had been originally furnished by the overseers, as a board: And if aid was furnished to Simpson, as a pauper, by the defendants, during his owning and occupying said freehold estate, it would prevent his acquiring a settlement by reason of such owning and occupancy."

The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions to the judge's rulings and instructions.

*Barton,* for the defendants.

*B. F. Thomas,* for the plaintiffs.

SHAW, C. J. The defendants having admitted the settlement of the pauper to be in their town, the presumption of law was, that the settlement continued till a new settlement was acquired; and they undertook to show that such new settlement had been acquired, by the pauper, in Douglas, by his owning a freehold in that town, and residing on it three years. The defendants, having thus taken upon them the affirmative, were bound to prove this case satisfactorily. Having proved such freehold and residence, this was *prima facie* evidence of settlement, but not conclusive.

It has been too frequently settled, to be now questioned, that where, by the statute, a settlement would be gained by a prescribed length of residence in a town, either as a freeholder living on his freehold, or as a resident paying taxes in five out of ten years, such settlement is not gained, if, during such esidence, the pauper receives support or relief from the town of his settlement. *Brewster* v. *Dennis,* 21 Pick. 233. *East Sudbury* v. *Waltham,* 13 Mass. 460. *East Sudbury* v. *Sudbury,* 12 Pick. 1. *West Newbury* v. *Bradford,* 3 Met. 428

*Taunton* v. *Middleborough,* 12 Mét. 35. It was, then, a question of fact for the jury ; and some evidence having been offered, by a paid town order, to prove such relief furnished, we think the court was right in ruling that it was incumbent on the defendants to explain this by showing that it was not furnished to the pauper as one standing in need of relief; or that it was not furnished by the overseers in their said capacity. If furnished at all by Sutton, the town of his settlement, it prevented him from acquiring a settlement, by living on his freehold in Douglas. But, to have that effect, it must appear that he was relieved as a pauper.

The instructions regarding the doings of the town, whether the report was accepted or. rejected, and whether parol evidence was admissible, and the effect of such evidence, may be laid out of the case, as wholly immaterial. If the town was bound, it was. by the doings of the overseers, as officers vested by law with power to bind the town by acts done in pursuance of their authority and duty. Such acts need no ratification by the town, to make them binding on the town. Rev. Sts. *c.* 46, §§ 1, 2, 13, 26. *Belfast* v. *Leominster,* 1 Pick. 123.

Two general questions arise in the present case. 1st. Did Simpson, the pauper, apply for relief; that is, for the public charity provided by law for persons standing in need ? 2d. Did the town, by their authorized officers, afford that relief? These questions were left to the jury, under instructions sufficiently favorable to the defendants, and the jury, upon the evidence, have found the affirmative to be true.

It was contended that the applicant for relief must be proved to have been in actual need of relief; and that apparent need was not sufficient. No facts appear which render this point material. But were it otherwise, all which could be required of officers would be vigilant inquiry and scund judgment in determining whether one obviously and apparently in need of relief is really so. Instances are not wanting, of persons living in alms-houses, or otherwise supported by public charity, on whom have been found considerable

sums of money concealed amongst the rags which indicated the most squalid poverty. If overseers, who are bound by law to afford immediate relief to actual want, and who must act upon the evidence before them, are sometimes deceived by appearances, still their acts, done in good faith, must be deemed acts binding on the town.

Whether the act of an individual overseer, not afterwards sanctioned by others, is binding on the town, is a question that I am not aware has been expressly decided. Cases may be supposed, where it would seem to be necessary for one overseer to act promptly when the others could not be consulted ; and it would seem, therefore, from the nature of the duty, that the act of one would be legal. It has been held that notice to one is sufficient; but that may go on the presumption that the one to whom it is given will communicate it to his associates. *Dalton* v. *Hinsdale,* 6 Mass. 501. *Walpole* v. *Hopkinton,* 4 Pick. 358. It is not necessary to decide this question, in the present case, because it appears that the act of Torrey, in furnishing relief, was adopted and sanctioned by his associates, by drawing an order on the town treasury for his reimbursement.

It is wholly immaterial to the present case, whether the overseers, in affording relief to Simpson, intended to fix, or change, or in any way affect, his settlement. That result is collateral to the act of furnishing relief, and does not depend on the intent with which it is done, but upon the provisions of law giving effect to it.

We think the instructions were sufficiently explicit, that in order to be considered as relief furnished by the town, it must appear that the order was given by Torrey, not as a gift or loan to the pauper, but as an advance, made by him as overseer, to be reimbursed by the town.

*Exceptions overruled.*